738 F.2d 587
 39 Fed.R.Serv.2d 519, 1984-2 Trade Cases 66,085,
16 Fed. R. Evid. Serv. 435
 Paul BOGOSIAN and Louis Parisi, on behalf of themselves and
all others similarly situated, Petitioners,
v.
GULF OIL CORPORATION, American Oil Company, Exxon
Corporation, Mobil Oil Corporation, Phillips Petroleum
Company, Shell Oil Company, Sun Oil Company of Pennsylvania,
Texaco, Inc., Cities Service Company, Atlantic Richfield
Company, Union Oil Company of California, Amerada Hess
Corporation, Getty Oil Company, Chevron Oil Co., and BP Oil,
Inc., Respondents,
and
Honorable Donald W. VanArtsdalen, Judge, United States
District Court, Nominal Respondent.
 No. 84-3013.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Feb. 8, 1984.
Decided June 28, 1984.
Rehearing and Rehearing In Banc Denied July 18, 1984.
 
 David Berger, H. Laddie Montague, Jr., Warren D. Mulloy, Howard Langer, Martin I. Twersky, Alan Sandals, Berger & Montague, P.C., Philadelphia, Pa., Harold Brown, Boston, Mass., Norman Zarwin, Zarwin & Baum, P.C., Philadelphia, Pa., for petitioners/class representatives.
 Charles I. Thompson, Jr., Michael L. Lehr, George E. Moore, Stephen D. Schutt, Ballard, Spahr, Andrews & Ingersoll, Ralph W. Brenner, Howard D. Scher, Gilbert F. Casellas, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., William Simon, Howrey & Simon, Washington, D.C., Adlai S. Hardin, Jr., Milbank, Tweed, Hadley & McCloy, New York City, Andrew J. Kilcarr, Donovan, Leisure, Newton & Irvine, Washington, D.C., Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Henry H. Janssen, Warren L. Simpson, Jr., Rawle & Henderson, Philadelphia, Pa., Hoyt H. Harmon, Jr., The Gulf Companies, Houston, Tex., David L. Doyle, Chicago, Ill., John H. Lewis, Morgan, Lewis & Bockius, Philadelphia, Pa., Thomas O. Kuhns, Fred H. Bartlit, Jr., Kirkland & Ellis, Chicago, Ill., Joseph P. Foley, Texaco Inc., White Plains, N.Y., for respondents.
 Before GIBBONS, SLOVITER and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Before us is a Petition for Mandamus filed by representatives of a national class action brought under the antitrust laws against the fifteen major oil companies on behalf of their lessee dealers. Petitioners seek the writ to direct the district court to vacate its orders compelling production of certain memoranda prepared by petitioners' counsel that petitioners contend are protected from discovery because they consist of work product containing solely mental impressions, thought processes, opinions and legal theories of counsel. The district court directed production because these memoranda were reviewed by expert witnesses who are scheduled to give what the parties agree are to be treated as trial depositions. In resolving this issue, we must analyze the interaction between Fed.R.Civ.P. 26(b)(3) and 26(b)(4), an issue which has received only scant consideration in the case law.
 
 I.
 Procedural Background
 
 2
 In the antitrust suit, petitioners allege concerted action by the defendants in imposing a tying arrangement on their lessee-dealers that eliminated or lessened price competition with respect to sales of gasoline. The allegations were reviewed in our prior decision, Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), which reversed the district court's entry of summary judgment in favor of certain defendants and remanded the class certification issue for reconsideration. Petitioners concede that they will rely primarily on expert testimony to prove their claims. They have designated eight trial experts hired to testify concerning gasoline marketing, statistics, economics, chemistry and automotive engineering. The district court ruled, and counsel agreed, that all designated trial experts will be subject to deposition pursuant to Fed.R.Civ.P. 26(b)(4)(A).
 
 
 3
 In Class Action Order No. 83, entered on November 29, 1983, the district court ordered petitioners to identify and produce documents with respect to expert witnesses. That order provided:
 
 
 4
 1. Exxon's motion to compel plaintiffs to answer Interrogatory No. 17 and to identify and produce certain documents with respect to each expert witness is denied, subject, however, that plaintiffs' obligation to identify and produce documents (whether or not subject to any past, pending or future interrogatory, request to produce, subpoena or any other discovery) in reference to each expert witness shall be limited to identifying and producing the following documents:
 
 
 5
 (1) All documents including final reports (but not preliminary or draft notes or reports), prepared in whole or in part by the expert on the subject matter and in connection with those matters about which the expert is expected to testify at trial.
 
 
 6
 (2) All documents sent to the expert by the plaintiffs or their counsel in reference to this litigation.
 
 
 7
 (3) All documents upon which the expert will rely for the opinion or opinions that the expert will express at trial.
 
 
 8
 (4) All documents utilized, relied upon, consulted and/or reviewed by the expert in connection with this litigation to the best of the expert's recollection.
 
 
 9
 (5) All documents setting forth any compensation agreement between plaintiffs and the expert.
 
 
 10
 (6) Transcripts of testimony given by the expert in any litigation, provided, however, that plaintiffs may object to producing transcripts on the ground that production would unduly invade the privacy of the expert. Plaintiffs shall, however, identify by court, term, number and date any and all litigation wherein the expert was either a party or testified as a witness.
 
 
 11
 (7) All documents used or relied upon by the expert in preparing answers to expert interrogatories.
 
 
 12
 (8) All documents that have been or will be shown to the expert during or in preparation of the expert's testimony at deposition or trial.
 
 
 13
 (9) All documents, including a curriculum vitae, that plaintiffs contend will establish the expert's qualifications for trial purposes.
 
 
 14
 App. at B.
 
 
 15
 Because plaintiffs' counsel had objected to the production of documents that constituted their work product, Class Action Order No. 83 permitted plaintiffs only to identify without producing documents as to which they asserted an attorney-client privilege or work product protection. The order provided:3. Any document as to which plaintiffs assert an attorney-client privilege or work product immunity shall be expressly identified as to date, author, recipients and such description of the subject matter as will provide an adequate basis to determine the validity of the claims without revealing the privileged or immune content, but such document need not be produced, subject to agreement of counsel or order of court.
 
 
 16
 App. at B.
 
 
 17
 Following the entry of Class Action Order No. 83, petitioners produced over 700 documents and identified hundreds of additional documents which were otherwise publicly available. They identified but did not produce an additional 115 documents specified as attorney work product. Thereafter, one of the defendants filed a motion to compel production of these additional documents.
 
 
 18
 On December 30, 1983, the district court issued Class Action Order No. 88, directing plaintiffs "to produce forthwith to defendants each of the documents identified by plaintiffs in their Identification of Documents pursuant to Class Action Order No. 83 but not produced on the ground of work product immunity." App. at E. Plaintiffs' motion for reconsideration of Class Action Order No. 88 was denied in an order denominated Class Action Order No. 91. Petitioners sought certification of the district court's order pursuant to 28 U.S.C. Sec. 1292(b). In denying that motion, the district court judge explained that he was unable to certify that an immediate appeal, with the concomitant requested stay, "may materially advance the ultimate termination of the litigation," which is part of the certification required under 28 U.S.C. Sec. 1292(b). The court acknowledged plaintiffs' intention to file an application for a writ of mandamus, and stated, "Personally, I would welcome a review of the ruling by the appellate courts, by whatever procedure such may be obtained." App. at A.
 
 
 19
 In explanation of its ruling requiring plaintiffs to produce work product documents, the district court reasoned that because the depositions of the experts could also be used as trial depositions, and because it was important that defendants have the right of thorough and complete examination of the experts, the need of the attorneys to prepare themselves before such depositions entitled them to "all of the information which the expert had and was given to him by counsel or otherwise." Tr. at 39, App.F. The court believed that "logic dictates that an attorney should not be able to converse with a hired expert of his choosing and have all such communications protected simply because the attorney expresses some opinion." Id.
 
 
 20
 The court had earlier recognized that plaintiffs' counsel contended that the documents at issue "contained our thought processes" and "our own intellectual process or otherwise that we put down on a piece of paper and give to an expert." Tr. at 72, App.C. However, the court stated:
 
 
 21
 It is obvious to me that there is a tension between the two sections of Rule 26 in situations where an attorney provides in writing to an expert witness retained by the attorney's client the attorney's thoughts or opinions about the case, which is sometimes called opinion work product. Under Rule 26(b)(3) such thought processes are to be protected. Yet, under Rule 26(b)(4) the opposing party is entitled to the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
 
 
 22
 I emphasize "the grounds for each opinion."
 
 
 23
 Clearly, the attorney's thoughts and opinions given to an expert witness can constitute part of the grounds for the expert witness' opinion. In such a situation, one of the Federal Rules' conflicting policies, it seems to me, would have to give way to the other. I conclude in this case that it is the attorney work product-qualified immunity which must give way.
 
 
 24
 Tr. at 35-36, App.F.
 
 
 25
 Thus, it is apparent that the district court ordered production of the documents because it construed Rule 26(b)(4)(A) as overriding the work product privilege of Rule 26(b)(3) as to all documents shown to an expert who is identified as an intended trial witness, even though such documents contain the mental impressions and thought processes of counsel. That is the legal issue presented to us by the petition for writ of mandamus.
 
 II.
 The Availability of a Writ of Mandamus
 
 26
 Under the All Writs Act, 28 U.S.C. Sec. 1651 (1982), the federal courts may issue all writs "necessary or appropriate in aid of their respective jurisdictions." We have explained that issuance of the writ may be "in aid of some present or potential exercise of appellate jurisdiction." United States v. RMI Co., 599 F.2d 1183, 1185 (3d Cir.1979). It is conceded that this case "may at some future time come within the court's appellate jurisdiction." United States v. Christian, 660 F.2d 892, 894 (3d Cir.1981). It is also evident that an adequate appellate remedy does not otherwise exist. The production order is plainly not appealable under 28 U.S.C. Sec. 1291 (1982), see, e.g., Borden Co. v. Sylk, 410 F.2d 843 (3d Cir.1969). Unlike the non-party witness, a party has no immediate right to appeal even if it has been adjudicated in civil contempt to gain compliance with a discovery order. DeMasi v. Weiss, 669 F.2d 114, 122 (3d Cir.1982). Also, plaintiffs were unsuccessful in their attempt to obtain interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 
 27
 Thus, petitioners come within the line of cases recognizing that mandamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in confidentiality. See, e.g., Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 953-54 (8th Cir.), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979) (disclosure of documents constituting trade secrets); Diversified Industries v. Meredith, 572 F.2d 596, 599 (8th Cir.1977) (attorney-client privilege); Usery v. Ritter, 547 F.2d 528, 532 (10th Cir.1977) (disclosure of identity of informer); United States v. United States District Court, 444 F.2d 651, 655-56 (6th Cir.1971) (disclosure to conspiracy defendant of monitored conversations), aff'd, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Harper & Row Publishers v. Decker, 423 F.2d 487, 492 (7th Cir.1970) (per curiam) (attorney-client privilege), aff'd by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971); Hartley Pen Co. v. United States District Court, 287 F.2d 324, 331 (9th Cir.1961) (disclosure of trade secret acquired under license forbidding disclosure).
 
 
 28
 When a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy, Harper & Row Publishers v. Decker, 423 F.2d at 492; Pfizer, Inc. v. Lord, 456 F.2d 545, 548 (8th Cir.1972), for compliance with the production orders complained of destroys the right sought to be protected. Jenkins v. Weinshienk, 670 F.2d 915, 917 (10th Cir.1982). Thus, in these circumstances, where there is no adequate, alternative procedure for review, a writ of mandamus does not constitute a device for avoiding the final judgment rule, see United States v. RMI, 599 F.2d at 1187. Rather, to delay review in such cases is to deny it altogether. Consequently, an appellate court may exercise its mandamus power and consider the merits of the claimed privilege.
 
 
 29
 We caution that mandamus is not to be used as an ordinary vehicle to obtain interlocutory relief from discovery orders. It is, however, available when necessary to prevent grave injustice. In Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964), the Supreme Court held that the Court of Appeals "had the power to review on a petition for mandamus the basic, undecided question of whether a district court could order the mental or physical examination of a defendant." As in Schlagenhauf, the legal issue presented by this petition is new to this court, and indeed there is only sparse discussion of it in the reported cases. Without mandamus review, litigants might be compelled to disclose documents that are protected from disclosure by strong public policy. Because "review would comport with the instructional goals of mandamus," United States v. Christian, 660 F.2d at 897, this is an appropriate case in which to consider the merits of the underlying discovery order through the vehicle of mandamus. Therefore, we turn to the merits of petitioners' claim.
 
 III.
 Work Product Protection
 
 30
 The genesis of the doctrine of attorney work product is the Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947), where the Court recognized "the general policy against invading the privacy of an attorney's course of preparation". The Court gave the following rationale for the policy:
 
 
 31
 Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.
 
 
 32
 Id. at 510-11, 67 S.Ct. at 393.
 
 
 33
 The work product of the lawyer covers the "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." Id. at 511, 67 S.Ct. at 394. It includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs ...." Id. As first ruled in Hickman, and now substantially codified in the Federal Rules of Civil Procedure, an attorney's work product may be discovered
 
 
 34
 only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
 
 
 35
 Fed.R.Civ.P. 26(b)(3). The basis for requiring a showing of necessity was explained by the Hickman Court:
 
 
 36
 Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
 
 
 37
 329 U.S. at 511, 67 S.Ct. at 393.
 
 
 38
 In this case, there is no contention by petitioners before us that defendants have failed to make the showing of need that would ordinarily satisfy Rule 26(b)(3). Instead, petitioners contend that the material that they resist disclosing falls within a special category of attorney's work product that is entitled to particular protection because it reflects the attorney's mental impressions. The distinction was recognized in Hickman where the Court said, "But as to oral statements made by witnesses to [the lawyer], whether presently in the form of mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production." Id. at 512, 67 S.Ct. at 394. Protection against disclosure of such material is explicitly required under Rule 26(b)(3):
 
 
 39
 In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
 
 
 40
 (emphasis added).
 
 
 41
 The particular protection to be accorded such work product, denominated "opinion work product," was reiterated in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct 677, 66 L.Ed.2d 584 (1981). Justice Rehnquist, writing for a unanimous Court, stressed the "special protection to work product revealing the attorney's mental processes." Id. at 400, 101 S.Ct. at 688. In the Upjohn case, a magistrate had directed production of notes and memoranda prepared by an attorney of oral interviews with witnesses. The magistrate had applied the "substantial need" and "without undue hardship" standard applicable to work product in general, without recognizing that such a standard is not appropriate for work product based on oral statements that would reveal the attorney's mental processes. In reversing, the Court stated, "It is clear that this is the sort of material the draftsmen of the Rule had in mind as deserving special protection." Id.
 
 
 42
 The Court recognized the division among the courts of appeals as to whether any showing of necessity could ever overcome protection of work product based on oral statements from witnesses. Compare In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir.1973) (no showing of necessity can overcome such protection) with In re Grand Jury Investigation, 599 F.2d 1224, 1231 (3d Cir.1979) ("special considerations ... must shape any ruling on the discoverability of interview memoranda"). The Upjohn Court commented,
 
 
 43
 While we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability by other means than was made by the Government or applied by the Magistrate in this case would be necessary to compel disclosure.
 
 
 44
 449 U.S. at 401-02, 101 S.Ct. at 688-89.
 
 
 45
 It is significant for the case before us that the work product that the Court held required "a far stronger showing of necessity and unavailability," id. at 402, 101 S.Ct. at 689, was an attorney's interview notes. The work product in this case merits even greater protection. Petitioners contend that the material here relates to the legal theories of their attorneys. In their Petition for a Writ of Mandamus, they describe the material as "documents prepared by attorneys containing solely their mental impressions and thought processes relating to the legal theories of a complex case." Since respondents are willing to accept this description for purposes of the Petition, we also assume that the documents at issue may reflect the legal theories of petitioners' attorneys. The documents thus described represent core work product, entitled to even more heightened protection than witness interview notes. If attorneys are to feel free to commit to writing the mental processes by which they sift and evaluate various possible theories on which they will base their cases, they must feel confident that such material will be protected from disclosure. Otherwise, the freedom of thought essential to carefully reasoned trial preparation would be inhibited.
 
 
 46
 With these principles in mind, we examine the grounds relied on by the district court in ordering disclosure of the work product material.
 
 IV.
 Disclosure to Expert Witnesses
 
 47
 The district court concluded that showing the material to the witnesses did not waive the protection for attorney work product, a view we accept as supported by persuasive authority. See United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1299 (D.C.Cir.1980); 3 J. Weinstein & M. Berger, Weinstein's Evidence p 612, at 612-41 to 612-42 (1982).[1] The district court held, however, that disclosure of the material was required first, because Rule 26(b)(3) is limited by a proviso that it is "[s]ubject to the provisions of subdivision (b)(4)" (covering discovery as to experts), and second, because "a party who is examining [the] witness [should be able] to examine into the material which the expert witness had received." Tr. at 39, App.F.
 
 
 48
 We believe the district court misread the import of the proviso that introduces Rule 26(b)(3). A parsing of Rule 26(b)(3), which appears in the margin,[2] makes clear that the proviso does not expand discovery of work product in the manner the district court believed. The first paragraph of Rule 26(b)(3) consists of two sentences. As we discussed in section III of this opinion, the first sentence requires a showing of "substantial need" before work product must be produced. The second sentence requires protection against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. The proviso introduces the first sentence of Rule 26(b)(3) ("Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents ... prepared in anticipation of litigation or for trial ...") and signifies that trial preparation material prepared by an expert is also subject to discovery, but only under the special requirements pertaining to expert discovery set forth in Rule 26(b)(4). The proviso does not limit the second sentence of Rule 26(b)(3) restricting disclosure of work product containing "mental impressions" and "legal theories". Thus, it does not support the district court's conclusion that Rule 26(b)(3), protecting this category of attorney's work product, "must give way" to Rule 26(b)(4), authorizing discovery relating to expert witnesses. Tr. at 36, App.F.
 
 
 49
 Nor can we find any support in Rule 26(b)(4) for the district court's conclusion. The Advisory Committee Notes explain that this Rule, included for the first time by the 1970 amendments, was designed to overcome cases that had limited or prohibited discovery of information held by expert witnesses. The Committee describes this rule as intended to "repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert." The Rule rejects "as ill considered the decisions which have sought to bring expert information within the work-product doctrine" and instead adopts an approach that allows some discovery and gives the district court discretion to order further discovery, subject to sharing of costs.
 
 
 50
 Rule 26(b)(4)(A)(i) permits interrogatories "to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions as to which the expert is expected to testify and a summary of the grounds for each such opinion." There is nothing in Rule 26(b)(4)(A)(i) that can justify requiring production of the material at issue here. It is expressly limited to interrogatories.
 
 
 51
 Rule 26(b)(4)(A)(ii) provides that "the court may order further discovery by other means, subject to such restrictions as to scope and such provisions ... of [the] rule, concerning fees and expenses as the court may deem appropriate." The district court reasoned that since the opposing party is entitled to the substance of the facts and opinions as to which the expert is expected to testify and a summary of the grounds for each opinion, and since "the attorney's thoughts and opinions given to an expert witness can constitute part of the grounds for the expert witness' opinion", discovery of counsel's opinion work product utilized by an expert witness "is a necessary corollary of the right to examine into an expert's basis for forming his opinion." Tr. at 36, 37, App.F. We do not agree with the conclusion.
 
 
 52
 The thrust of Rule 26(b)(4) is to permit discovery of facts known or opinions held by the expert. Examination and cross-examination of the expert can be comprehensive and effective on the relevant issue of the basis for an expert's opinion without an inquiry into the lawyer's role in assisting with the formulation of the theory. Even if examination into the lawyer's role is permissible, an issue not before us, the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product.[3] The Advisory Committee Notes to Rule 26(b)(3) state in part:
 
 
 53
 Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions. But documents or parts of documents containing these matters are protected against discovery by this subdivision. Even though a party may ultimately have to disclose in response to interrogatories or requests to admit, he is entitled to keep confidential documents containing such matters prepared for internal use.
 
 
 54
 Thus, the Notes recognize that even if interrogatories may permissibly require disclosure that verges on mental impressions, opinions, or conclusions, the documents themselves should be protected.
 
 V.
 Procedure to Protect Core Work Product
 
 55
 Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts. It would represent a retreat from the philosophy underlying the Federal Rules of Civil Procedure if a party could shield facts from disclosure by the expedient of combining them or interlacing them with core work product. Where such combinations exist, it will be necessary to redact the document so that full disclosure is made of facts presented to the expert and considered in formulating his or her opinion, while protection is accorded the legal theories and the attorney-expert dialectic. The Advisory Committee Notes also recognize this need. They state, "In enforcing [the Rule 26(b)(3) protection of lawyers' mental impressions and legal theories], the courts will sometimes find it necessary to order disclosure of a document but with portions deleted."
 
 
 56
 We do not generally encourage extensive in camera examination of documents by the district court. The district courts are overburdened with discovery matters, and most disputed issues are capable of resolution between attorneys if a serious attempt is made to do so. On the other hand, in the few situations where public policy requires protection of portions of a document, in camera inspection by the trial judge or magistrate is unavoidable. Documents claimed to contain legal theories fall within that small class of documents requiring in camera examination if the adversary is not satisfied with the attorney's claim of total work product protection. See Kerr v. United States District Court, 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976); United States v. Nixon, 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974).
 
 VI.
 Conclusion
 
 57
 When Rules 26(b)(3) and 26(b)(4) are viewed as set forth here, we believe they do not present the "tension" that the district court saw, and that the policies underlying each section can be satisfied. Judge VanArtsdalen, who has supervised this litigation for thirteen years, is both experienced and judicious, and we are confident that he can proceed in accordance with this opinion without formal issuance of the writ of mandamus.[4]
 
 
 58
 For the foregoing reasons, we will remand this case to the district court for further proceedings consistent with this opinion.
 
 
 59
 BECKER, Circuit Judge, dissenting.
 
 
 60
 I agree with many of the sentiments expressed by the majority concerning the desirability of enabling attorneys to put their thoughts on paper without having to fear that there recollections will be subject to the eyes of adversaries during litigation.[1] Sharing the majority's high regard for Judge Van Artsdalen, I also understand the delicacy of the majority in its refusal to grant a writ of mandamus despite what it apparently believes to be the "clear legal error" of the district court. See Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1074 (3d Cir.1983) (setting forth standard for mandamus).[2] I believe, however, that observance of the formalities is the better and more certain practice. I would issue the writ in this case, though the course I would direct the district court to follow upon remand differs significantly from that suggested by the majority.
 
 I. THE REFUSAL TO ISSUE MANDAMUS
 
 61
 To begin with, I believe it is a mistake for the majority to refuse to issue a writ of mandamus after having written an opinion that in essence directs the district court to reverse itself and protect the work product.[3] First, there is mischief resulting from this discrepancy between opinion and judgment. If, as I assume will happen, the district court heeds the majority's advice and denies production of the documents the defendants had sought, the defendants will, as a practical matter, have lost this case. Because of the failure of the court to issue the writ, however, the defendants may technically have won and thus be foreclosed from petitioning the Supreme Court for certiorari review of today's decision.[4] Second, because the impact of the majority opinion is not clear, at least to me, in certain of its aspects,[5] I think the better practice is to issue a clearly worded writ lest the district court be confused as to its charter on remand.
 
 II. THE MERITS
 
 62
 Although the majority does not so state in terms, as I read its opinion, there is no absolute protection against discovery of "core work product." Rather, under the majority's approach, core work product is subject to an extremely high degree of protection that can be overcome only by a kind of showing that has yet to be made in any reported case but that may yet be made on some extraordinary, as yet unforeseeable record. Accord In re Murphy, 560 F.2d 326 (8th Cir.1977). Because the majority has itself conducted a balancing and found the value of the documents sought after to be only "marginal," I also read the majority as advising Judge Van Artsdalen to vacate his order (Class Action Order # 88) for production of attorney core work product, without any further proceedings.
 
 
 63
 In holding as it has, the majority has failed to consider the most important interest of the defendants in discovering this material at this point in the litigation: the need to impeach plaintiffs' expert economist at his deposition. Although ordinarily this interest would not be sufficient to require the production of "core work product," in this case, as Judge Van Artsdalen understood, the plaintiffs might well seek to introduce the deposition as evidence at trial, in lieu of live testimony. Under these circumstances, I believe the question we must confront is whether the defendants' interest in having this material available for cross-examination of the expert economist "at trial" outweighs the plaintiffs' interest in protecting this core work product.
 
 
 64
 Under Rules of Evidence 802 and 804(b)(1), deposition testimony is admissible into evidence only if adverse parties had an opportunity to cross-examine the deponent. This opportunity must, of course, be roughly comparable to that which would have been available at trial. See Mancusi v. Stubbs, 408 U.S. 204, 213-16, 92 S.Ct. 2308, 2313-14, 33 L.Ed.2d 293 (1972); United States v. Franklin, 235 F.Supp. 338, 341 (D.D.C.1964). Accordingly, the majority is implicitly holding that the district court would commit a mandamus-worthy abuse of discretion if it failed to quash a subpoena duces tecum aimed at the "work product" for use in impeaching an expert testifying at trial, and is also suggesting that the unavailability of such documents during discovery does not so deprive the defendants in this case of the right to cross-examine that the deposition testimony would be inadmissible under Rules 802 and 804(b)(1).[6] These are different--and much more difficult--questions than those the majority actually addresses. Whether the district court under such circumstances would commit an abuse of discretion either by failing to quash the subpoena duces tecum or by excluding the deposition transcript depends on the circumstances, I believe. This very fact suggests that it is primarily a matter for the exercise of district court discretion in the crucible of trial.
 
 
 65
 Were we in an ordinary discovery situation, I might go as far as the majority does in protecting the work product. Since the primary value of the communications between expert and attorney does not come from its capacity to lead to admissible evidence, see Fed.R.Civ.P. 26(b)(1), but rather in its value as impeachment, there is no great need early in the litigation for these documents. Thus, in the ordinary situation where the deponent will testify at trial, if at all, concerns over work product doctrine may best be resolved at an in limine hearing just prior to or during the trial. By that time, the problem may have disappeared or be more carefully focused than it is at discovery, when the issues in the case and the probative value of testimony is often uncertain. Where as here, however, the witness will apparently be unavailable at trial, the district court may not have this luxury.
 
 
 66
 Turning to the exercise of discretion, one circumstance that must guide the district court in determining whether to quash the subpoena or, equivalently in this case, to deny discovery, is the adverse parties' need for the work product. I disagree with the majority's pronouncement--which it apparently believes to be one of law--that evidence demonstrating that an economist's theory did not originate or evolve as a result of his own research, but rather as a result of the hiring lawyer's suggestion, is of only "marginal value." Rather, such a revelation could, in some cases, critically alter the finder of fact's assessment of the expert's testimony. While the majority would (I think) concede that the expert could be cross-examined concerning the attorney's role in the development of this theory,[7] see Fed.R.Evid. 705, the issue here is whether (and when) extrinsic evidence can be used to impeach an economist who denies or minimizes the lawyer's role in "shaping" his "expert" findings.
 
 
 67
 The majority would apparently exclude the extrinsic evidence under almost all circumstances. As I read his opinion, Judge Van Artsdalen apparently would have admitted it under almost all circumstances. I would take a more flexible and more particularized approach. Specifically, I would suggest that the judge inspect the documents in camera and decide whether their impeachment value in the particular case would significantly outweigh the chill on development of legitimate attorney work product that would admittedly accompany disclosure. As I have acknowledged, this latter consideration is entitled to great weight. Ordinarily this inspection would take place at an in limine hearing before trial;[8] under the unusual circumstances of this case, it could take place either before or at the economist's deposition.[9] In this case, the district court undertook no such inspection and made no such balancing. Instead, it simply declared there to be a need for the material to facilitate cross-examination and thereupon ordered production. This order amounted to clear legal error and requires the writ of mandamus to issue.
 
 
 68
 While the test I have proposed admittedly suffers the defects of balancing incommensurables, it is at least sensitive to the interests at stake. The majority's holding, however, is in significant and unacknowledged tension with contrary authority from impressive sources discussing the relationship between work product doctrine and Federal Rule of Evidence 612, which allows production of material used to refresh a witness' recollection. In Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613 (S.D.N.Y.1977), Judge Frankel held that whenever core work product is shown by counsel to a witness in preparation for trial, the protection of the work product doctrine[10] is waived.[11] Judge Schwartz held similarly in his excellent opinion in James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138 (D.Del.1982). See also Wheeling-Pittsburgh, Inc. v. Underwriters Laboratories, Inc., 81 F.R.D. 8 (N.D.Ill.1978). Academic commentators have also recognized that work product may be significantly less protected when its content becomes a subject of testimony. See Note, Interactions Between Memory Refreshment and Work Product Protections Under the Federal Rules, 88 Yale L.J. 390, 404-06 (1978). While these cases do not deal with the precise issue that is faced in this case--the collision of Rule 705 requiring disclosure of the basis for an expert's opinion and the work product doctrine--they seem similar enough to render the majority's confident tone somewhat suspect. I would not fully apply the holdings of these cases to the situation at bar--even assuming Berkey and James Julian are right, there is a difference between use of work product to refresh memory and to create beliefs in the first place. I believe, however, that the interests those courts focused upon must guide the district courts here.[12]
 
 
 69
 In summary, I would grant the writ of mandamus in this case not because communications between the lawyer and his expert are absolutely (or almost absolutely) immune from discovery and privileged, but because the district court did not conduct an in camera inspection and make the factual findings needed to determine whether the need for the documents in order to impeach in this case outweighs the general and weighty presumption against disclosure of work product. The majority's failure to issue the writ may well leave the district court confused as to its charter on remand. I would issue mandamus and advise the district court to conduct an in camera inspection and make findings on these matters. Therefore, I respectfully dissent.
 
 
 
 [1]
 The situation is distinguishable from that before the Court in United States v. Nobles, 422 U.S. 225, 239-40, 95 S.Ct. 2160, 2170-71, 45 L.Ed.2d 141 (1975), where the Court held that a defense investigator waived protection over his own reports of witness statements when he testified that those statements contradicted testimony introduced at trial
 
 
 [2]
 Rule 26(b)(3) provides in relevant part:
 (3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
 
 
 [3]
 We believe that the same reasoning applies to reject the contention made before the district judge, but not pressed on appeal, that Fed.R.Evid. 612 governing documents used to refresh a witness' memory requires disclosure. Even assuming that this provision applies to documents shown before trial to an outside expert, the purposes of Rule 612 are generally fully served without disclosure of core work product. Rule 612, like Fed.R.Civ.P. 26(b)(4), does not displace the protections of Fed.R.Civ.P. 26(b)(3). See 3 J. Weinstein & M. Berger, supra, at 612-41 to 612-42; Note, Interactions Between Memory Refreshment and Work Product Protection Under the Federal Rules, 88 Yale L.J. 390, 404-06 (1978)
 
 
 [4]
 Judge Becker in his dissent dwells on our failure to actually issue the writ. Our action in this respect is in accordance with a long line of precedent in this court. See, e.g., United States v. RMI Co., 599 F.2d 1183, 1190 (3d Cir.1979); Rapp v. Van Dusen, 350 F.2d 806, 814 (3d Cir.1965) (in banc). As the court stated in the latter case, "Petitioners may ... apply to this court for a formal order directing the issuance of the writ of mandamus if the need therefor should arise." Id
 
 
 [1]
 In particular, I agree that the district court erred in ordering production of the "work product" without apparent consideration of factors set forth in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). I also agree with the majority that Rule 26(b)(4) cannot be read as wholly overriding Rule 26(b)(3), and that the conclusion that it does is the linchpin of the district court's decision
 
 
 [2]
 Though it might conceivably be so read, I do not understand the majority opinion to be creating an exception to the "clear legal error" rule of our mandamus jurisprudence for cases in which there is an order for production over a litigant's claim of privilege or immunity
 
 
 [3]
 Were the majority to issue the writ of mandamus (as its opinion suggests), my opinion would be a concurrence and not a dissent
 
 
 [4]
 At the very least, the majority has created a problem for the Supreme Court. If the defendants' petition for certiorari on grounds that as a practical matter they have lost this dispute, the Supreme Court will have to decide whether its certiorari statute, 28 U.S.C. Sec. 1257 (1982), permits it to review the record upon petition from a party that in the most technical sense has won. While I would anticipate that the Supreme Court would respond that its certiorari jurisdiction did not extend so far--it review judgments, not opinions--or would deny certiorari on discretionary grounds, that body has far better things to worry about. Supreme Court review of the issue in this case might also be obtained were the plaintiffs (who technically have lost) to petition for certiorari. I regard this possibility, however, as remote. Indeed, the scenario can be extended. In the event that the district court were to read the entire majority opinion as dicta and, in light of the failure of the court of appeals to issue a writ of mandamus, continued to order discovery of the "core work product," our denial of mandamus might, by law of the case and our Internal Operating Procedures Chapter VIIIC prevent any subsequent panels of this circuit from granting the new mandamus petition from the plaintiffs that would surely follow. Such a result would be as unfair to the plaintiffs in this litigation as is the possible foreclosure of certiorari to the defendants. While the example is fanciful here, it points up the problem with the majority's approach
 
 
 [5]
 What happens, for example, if the defendants revive their attempt to subpoena these documents under Fed.R.Civ.P. 45(d)?
 
 
 [6]
 Though I doubt it, it is, of course, possible that the majority is not ruling at all on either the admissibility of the deposition transcript at trial or on the propriety of a subpoena duces tecum aimed at obtaining these materials for trial. It may simply be ruling that no discovery of the work product may be had now. I suspect, however, the plaintiffs would be astonished with the Pyrrhic victory they would have obtained today were they to find that, because of the inadequate opportunities for cross-examination, the deposition of their expert could not be introduced at trial or to discover that a subpoena duces tecum aimed at their work product would not be quashed
 
 
 [7]
 I would so hold, as did Judge Van Artsdalen. On the other hand, under the majority's approach without benefit of any examination of the documents, the adverse parties' attorney might not have the requisite good-faith basis for cross-examination of the expert on this point
 
 
 [8]
 The use of pre-trial in limine hearings to resolve difficult evidentiary problems in complex cases was approved in In re Japanese Electronics Products, 723 F.2d 238, 260 (3d Cir.1983)
 
 
 [9]
 The judge may, of course, preside at trial depositions
 
 
 [10]
 The Supreme Court has been assiduous in terming the protection offered work product as a "doctrine" and as an "immunity," not as a "privilege." See United States v. Arthur Young & Co., --- U.S. ----, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); Upjohn Co. v. United States, 449 U.S. 383, 397-402, 101 S.Ct. 677, 686-89, 66 L.Ed.2d 584 (1981)
 
 
 [11]
 It is not clear whether these cases proceeded on the theory that the work product doctrine's protections were waived when the attorney refreshed his witness' memory, or whether the limited protections of the doctrine were overcome by the need of adverse parties to cross-examine the witness effectively concerning his testimonial capacities. I do not believe this issue matters much, however
 
 
 [12]
 The majority's opinion is also in unacknowledged opposition to the decision in Boring v. Keller, 97 F.R.D. 404, 406-08 (D.Colo.1983). Although the Boring court relied in part on two circuit court opinions in reaching its conclusion, United States v. Meyer, 398 F.2d 66 (9th Cir.1968), and United States v. McKay, 372 F.2d 174 (5th Cir.1967) (per Maris, J., sitting by designation), my review of those cases suggests that the issues there were somewhat different. Thus, I do not think our opinion today creates a circuit conflict