In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

MDL No. 150 AWT (EEx).

United States District Court,
C.D. California.

July 22, 1992.

## ORDER COMPELLING PRODUCTION OF CERTAIN DOCUMENTS

EDWARDS, United States Magistrate Judge.

Supplementing the magistrate judge's Minute Orders of April 13, 1992, and May 14, 1992, and after review of all the papers filed relating to plaintiff State of Washington's motion for protective order filed February 10, 1992, as outlined and briefed in the parties "Amended Joint Stipulation Regarding Unresolved Discovery Disputes," filed April 7, 1992 (hereinafter "joint stipulation"), together with "Plaintiffs Supplemental Response, etc.," filed April 16, 1992, and "Defendants' Statement In Response, etc." filed May 29, 1992, the court finds and orders as follows:

### 1. *Background.*

On December 31, 1991, defendants submitted to plaintiffs requests for production of documents under Rule 34, F.R.Civ.P. Only requests numbers 1, 9, & 17 are pertinent here. Each of the requests pertains to documents related to activities of plaintiffs' experts.

Request No. 1 asked for:

All documents relied upon or prepared by or under the direction of plaintiffs' experts in the course of preparing any declaration, affidavit or report relating to this action or any opinions, conclusions or testimony regarding plaintiffs' claims herein.

Request No. 9 asked for:

All documents which constitute, contain, discuss or comment upon any data or assumptions reviewed by plaintiffs' experts in connection with this litigation.

On January 17, 1992, plaintiffs responded to request no. 9 (and to Request No. 1 in almost identical language), after objecting on grounds not relevant here:

... Plaintiffs also object to this request to the extent it seeks documents relating to experts who have not been designated as witnesses in this litigation, or documents relating to experts who have been designated as experts in this litigation but concerning topics upon which they have not been designated to testify, or documents neither prepared by nor reviewed by experts, as invading the work product protection. *Notwithstanding these objections, plaintiffs will provide the documents relating to expert witnesses Tom Saving and Keith Leffler, relating to declarations they have filed in their [sic] action and/or the testimony they have been designated to give at trial.* (Emphasis added.)

Request for Production No. 17 asked for:

All memoranda, notes of meetings or correspondence from June 1975 to the present prepared by or exchanged between or among one or more of Thomas R. Saving, Keith Leffler and plaintiffs' counsel relating to any aspect of this litigation.

Plaintiffs responded, after objections not relevant here:

... Plaintiffs also object to this request to the extent that it asks for documents not authored by or written to Tom Saving and/or Keith Leffler on the subject about which they will testify as invading the work product protection. *Notwithstanding these objections, plaintiffs will provide the documents requested authored by or written to expert witnesses Tom Saving and Keith Leffler and relating to declarations they have filed in their [sic] action and/or the testimony they have been designated to give at trial.* (Emphasis added.)

Notwithstanding these responses, plaintiffs have not produced certain documents which are concededly within the scope of the above requests. In the joint stipulation filed under Local Rule 7.15.2, the parties treat one document as typical and rely on the same arguments for the other documents. The court will do likewise. This document was a critique written by a paralegal in the State of Washington's Attorney

General's Office. The document critiqued a technical report written by plaintiffs' expert, Dr. Saving. The subject of the report is concededly related to testimony Dr. Saving is expected to give at trial.

On January 20, 1992, defendants apparently first learned of the existence of the critique when they took Dr. Saving's deposition and, using another document produced by plaintiffs, obtained testimony from Dr. Saving that plaintiffs had requested that Dr. Saving return the critique to the Washington Attorney General's Office. Dr. Saving had done so and was not able to be cross-examined on it at that time. At the deposition, counsel for plaintiffs did not object to questions by defendants' counsel about the critique. Defense counsel was clearly relying on obtaining the document to further examine Dr. Saving, as evidenced in the colloquy:

MR. MITTELSTAEDT (DEFENSE COUNSEL): Mr. Kagay, I would request that you check as soon as possible with the Washington AG's office and ask them to produce to us without any further delay a copy of that.

MR. KAGAY (PLAINTIFFS' COUNSEL): I will check with them and see what they've got.

Later, in the same deposition defense counsel interrogated Dr. Saving and commented as follows:

Q. Would it be helpful for you to look at the Washington critique or review of your affidavit?

A. It probably would. I have not seen that for however—whenever it was written.

Q. You haven't seen it for many years?

A. That's right

Q. Maybe when we get that from Washington—when Mr. Kagay gets that from Washington and gives it to us, we can come back to this point.

Plaintiffs' counsel said nothing in response.

Later, on January 30, 1992, after the State of Washington was "unable to locate" the critique, defendants noticed the State of Washington's deposition under Rule 30(b)(6), F.R.Civ.P., seeking testimony about the preparation of the critique, where it was filed, and what steps that plaintiff Washington had taken to find it. Plaintiff State of Washington apparently thereafter found the document and filed the current motion for protective order herein on February 10, 1992.

Pursuant to the Local Rules of the Central District of California, the parties filed a joint stipulation setting forth their positions regarding the critique, as well as other documents at issue herein.

2. *Discussion.*

The single issue is whether plaintiffs may rely on the work product rule to avoid production of the critique (and other documents described in the joint stipulation). Both parties apparently accept that the documents would be protectable under the work product rule, if the protection has not been waived.

After careful consideration, the court concludes that none of the documents requested is immune from discovery under the work product rule. Under the particular circumstances of this case, the court concludes that plaintiff State of Washington has waived any work product immunity it may have had relative to the production of the documents in question. As previously noted, plaintiffs specifically agreed in response to the requests for production of documents to provide all documents relating to testimony that Dr. Saving has been designated to give at trial.

Plaintiffs papers do not address this failure to object to production; they simply argue that the documents are protected by the work product rule. While a failure to object is not always fatal, in this case it would be contrary to the purposes of the work product rule to permit the plaintiffs to assert the immunity now. The values protected by the work product rule are no less important to a party seeking discovery than to one responding to discovery requests. One important purpose of the rule is to protect the mental processes of counsel. Ironically, defendants have had to expose at least some of their counsels' mental

processes, including cross-examination strategy, in pursuing documents that plaintiffs led them to believe would be produced without objection. For example, it was only after defense counsel meticulously examined Dr. Saving and uncovered the existence of the critique that plaintiffs discovered the critique and objected to its production. (Previously, as noted above, the document had been neither identified nor produced by plaintiffs, even though it was concededly within the scope of those documents plaintiff had agreed to produce.)

The broader justification for the work product rule, as originally set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), was that to require attorneys to turn their work product over to the opposition would simply be demoralizing and would poorly serve the interest of either clients or the cause of justice. Yet, it would be equally demoralizing and contrary to those interests to tantalize opposing counsel, leading him to believe that all documents within certain categories would be produced without objection, only to frustrate his efforts as they approached fruition. It would be especially demoralizing to permit a responding party to wait until opposing counsel had ferreted out the precise documents of interest only then to be told that they would not be produced.

To permit the belated assertion of work product immunity that plaintiffs urge here would also reward sloppy lawyering and sharp practices. An attorney receiving requests for production of documents could simply take the path of least resistance,

responding affirmatively but deferring any genuine search for responsive documents to see whether opposing counsel could prove their existence first. Then, after opposing counsel independently identified pertinent documents and disclosed the role they would play at trial, responding counsel could examine the documents and focus his objections on the very ones shown by his opponent to be most important. To deter such practices, a healthy adversary system must recognize a work product rule that also functions effectively in reverse, protecting parties taking discovery as well as parties responding to discovery.[1]

For the foregoing reasons, the court concludes that by plaintiffs' clear responses to discovery requests and by their conduct after responding, they demonstrated a clear intent not to claim the work product immunity. Accordingly, it is unnecessary to decide whether plaintiffs also waived the immunity by turning over documents to witnesses who were designated to testify about the same subject matter at trial.[2]

Plaintiffs' motion for protective order filed February 10, 1992, is DENIED.[3] Plaintiffs are ordered to produce all documents at issue in the joint stipulation for which objection to production was grounded on work product immunity.[4]

---

1. The magistrate judge does not suggest that the conduct of any counsel herein evidenced a bad motive or any ignoble purpose. There is no evidence of either. Culpable conduct would affect the nature of potential sanctions, but it would not affect the finding herein that plaintiffs waived work product immunity.

2. The analysis of whether this also resulted in a waiver of work product immunity may involve, for example, balancing the policies and values discussed herein and in *Bogosian v. Gulf Oil Corp*, 738 F.2d 587 (3rd. Cir.1984) and *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal.1991).

3. The scope of relief requested in the motion for protective order is not identical to that argued

in the joint stipulation filed April 7, 1992. The latter governs the scope of this order.

4. Plaintiffs' *supplemental response to defendants* joint request for the production of documents, filed April 16, 1992, and defendants' statement in response to that document filed May 29, 1992, have apparently greatly narrowed the number of documents to which this order applies. Defendants' statement suggests that plaintiffs' supplemental response may leave some ambiguity as to what documents must now be produced. If, after conferring, counsel dispute the application of this order to any particular document, counsel for any party may obtain review without further compliance with Local Rule 7.15 by serving and filing a brief

statement of the problem to be resolved. The opposing party may then, within 10 days, file a response, and the court will take the matter under submission on the written papers, unless otherwise ordered.