Sidney BLUMENTHAL and Jacqueline
Jordan Blumenthal, Plaintiffs,

v.

Matt DRUDGE, Defendant.

Civ.A. No. 97–1968(PLF).

United States District Court,
District of Columbia.

April 22, 1999.

William Alden McDaniel, Jr., McDaniel & Marsh, Baltimore, MD, for plaintiffs.

Manuel S. Klausner, Los Angeles, CA, for defendant.

## OPINION

FRIEDMAN, District Judge.

The Court has before it ripe motions to compel discovery from both parties. Defendant first filed a motion to compel plaintiffs to respond fully to three categories of defense discovery requests: (1) all of defendant's interrogatories and requests for production of documents to which plaintiffs objected out of time, (2) defendant's request for plaintiff Sidney Blumenthal's notes of his conversations with David Brock and several other journalists, and (3) a number of questions that Mr. Blumenthal refused to answer at his deposition on grounds of executive privilege. Defendant also requested that the Court impose monetary sanctions on plaintiffs and their counsel under Rule 37 of the Federal Rules of Civil Procedure for engaging in improper conduct requiring the litigation of this discovery dispute. Plaintiffs responded that (1) they did not waive their objections to defendant's written discovery requests by responding late, (2) Mr. Blumenthal's notes are protected as attorney-client communications or attorney work product, and (3) some of Mr. Blumenthal's answers to the deposition questions would be protected by executive privilege.

Plaintiffs then moved to compel defendant to respond to a number of their interrogatories and document requests. Specifically, plaintiffs requested the Court to compel defendant to respond to (1) a number of interrogatories and requests for production of documents that appear to have been shared with third parties who are not lawyers for which defendant nevertheless asserted the attorney-client privilege, (2) interrogatories and document requests regarding defendant's sources of information about plaintiffs, and (3) interrogatories and document requests regarding the membership of defendant's legal defense fund. Defendant responded that (1) the third party with whom information was shared is a litigation consultant, (2) information about defendant's journalistic sources is protected under the California Constitution and the First Amendment, and (3) plaintiffs' request for the membership of defendant's legal defense

fund is irrelevant and violates the First Amendment rights of the fund members.[1]

## I. BACKGROUND

The circumstances from which this action arose were fully described in the Court's Opinion of April 22, 1998. *See Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C.1998). In general, plaintiffs allege that defendant Matt Drudge published defamatory material about them on his world wide web site, the "Drudge Report." Plaintiffs originally filed suit against both Mr. Drudge and his internet service provider, America Online, Inc. ("AOL"). The Court granted summary judgment in favor of AOL, finding that AOL was immune from suit under the Communications Decency Act of 1996. *Id.* at 49–53. In the same Opinion, the Court held that it had personal jurisdiction over Mr. Drudge and ordered the matter to proceed to discovery. *See id.* at 53–58.

Once discovery began, the parties and their lawyers quickly devolved to the kind of conduct that rightly gives the legal profession a bad name. The papers filed by lawyers on both sides, and the correspondence and deposition excerpts that accompany them, are replete with examples of rudeness, childish bickering, name-calling, personal attacks, petty arguments and allegations of stonewalling and badgering of witnesses. There is such mistrust and suspicion that counsel refuse even to talk to each other on the telephone to attempt to resolve discovery disputes.[2] While the Court is not at this stage inclined to waste its time resolving these matters and declines defendant's request for the imposition of sanctions on this occasion, it reminds counsel of a few rudimentary principles.

First, if Mr. Blumenthal is "a very busy man, involved in many high stakes matters that require constant attention" and Mrs. Blumenthal also is "busy in her job," *see* Plaintiffs' Opposition at 8, perhaps they are too busy to be plaintiffs in this lawsuit. Plaintiffs brought this lawsuit and thereby voluntarily subjected themselves to the discovery process, which by its nature is not always pleasant and not always compatible with one's personal or business travel schedules or professional obligations. If plaintiffs are too busy for discovery, they are free to drop their lawsuit. The choice is theirs.

Second, defendant is reminded that not all subjects are relevant to the claims brought against him or the legitimate defenses he might raise in this lawsuit. *See* Rule 26(b)(1), Fed.R.Civ.P. Nor is the exploration of such wide-ranging subjects likely to lead to the discovery of admissible evidence. *Id.* This Court cannot fathom, for example, why defendant and his counsel believe it is appropriate to ask plaintiffs questions about Geraldo Rivera, Henry Hyde, Robert Dole, the emotional state or alleged extra-marital relationships of various public figures, grand jury subpoenas, the "vast right wing conspiracy," or the address of the parents of the girlfriend of a particular reporter. There are limits under the Federal Rules of Civil Procedure, as well as limits set by both common sense and common decency. The purpose of the court system is to resolve civil disputes—and in a civil way. Litigation is not just another arrow in the quiver of those with a political agenda or who are practitioners of the "gotcha" mentality of some journalists and purveyors of infotainment.

Third, counsel are reminded that they—not their clients—have a professional obligation to control the means and methods used to achieve the goals of this litigation and that they must act as professionals even if that requires them to tell their clients that certain tactics are beyond the pale. *See* D.C. RULES OF PROFESSIONAL CONDUCT, Rule 1.2 (1996). Lawyers are not to reflect in their conduct, attitude or demeanor their clients' ill feelings toward other parties and may not

---

1. It appears that defendant's objections to plaintiffs' interrogatories and document requests on the grounds of vagueness and irrelevance have been resolved through the clarification given in plaintiffs' motions to compel.

2. The Court notes that plaintiffs' counsel is still refusing to accept phone calls from defendant's counsel, requiring communication between counsel to occur by facsimile. This practice is unacceptable. Counsel should be able to communicate in a civil and professional manner using the telephone.

"even if called upon by a client to do so, engage in offensive conduct directed towards other participants in the legal process," or "bring the profession into disrepute by ... making ad hominem attacks...." D.C. BAR VOLUNTARY STANDARDS FOR CIVILITY IN PROFESSIONAL CONDUCT ¶¶ 3, 15 (1997); *see* AMERICAN BAR ASSOCIATION, GUIDELINES FOR LITIGATION CONDUCT ¶¶ 2, 4, 10, 14, 20, 22, 24, 26, 27 (1998).

Finally, both the Federal Rules of Civil Procedure and the disciplinary rules of this Court provide for sanctions and discipline which the Court will not hesitate to invoke as this lawsuit proceeds. *See* Rule 11, Fed. R.Civ.P.; Local Rules 703, 706, 707. Counsel who have been admitted *pro hac vice* are also reminded that their continued participation is subject to the discretion of the Court. *See* Local Rule 104(d).

## II. DEFENDANT'S MOTION TO COMPEL

### A. *Defendant's Written Discovery Requests*

■ Defendant first argues that plaintiffs waived all objections to his written discovery requests by serving their responses after they were due.[3] While "[a]ny ground not stated in a timely objection [to an interrogatory] is waived unless the party's failure to object is excused by the court for good cause shown," Rule 33(b)(4), Fed.R.Civ.P., the rule by its terms gives the Court discretion to excuse the failure. The same principle applies to written document requests under Rule 34(b) of the Federal Rules of Civil Procedure. *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.1992); *see* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2176 (1994) (courts have "broad discretion" to determine waiver). It is undisputed that plaintiffs submitted their responses late—either

five or nine days after they were due, depending on whether one accepts plaintiffs' or defendant's representation as to when they were served. It is also clear that plaintiffs' counsel never filed a motion seeking an extension of time.

Discovery deadlines are intended to ensure the efficient progress of a lawsuit and counsel are expected to comply with them. If plaintiffs' counsel were not able to meet a discovery deadline, they should have sought an agreement with defendant's lawyer to submit their responses at a later date. *See* Local Rule 108(m). If such consent was not provided by counsel as a professional courtesy, plaintiffs' counsel should then have sought an extension of time from the Court by motion. *See* Rule 6(b)(1), Fed.R.Civ.P. Plaintiffs' counsel's assertion that it believed "it would be a much better use of counsel's time to prepare the discovery responses rather than take time out to prepare a motion for extension of time," Plaintiffs' Opposition at 8, is an unacceptable response and certainly does not constitute "good cause." While the Court likely would have granted a motion for an extension of time had such a request been made in advance of the due date, counsel was required by the Rules to make the request in writing and have it granted before acting contrary to the discovery deadlines. Counsel is expected to do so in the future. Nonetheless, in the exercise of its broad discretion, the Court finds that plaintiffs have not waived their right to raise their objections even at this late date.[4] With the exception of plaintiffs' claims of privilege for Mr. Blumenthal's notes, however, defendant has not challenged the merits of any of plaintiffs' objections to defendant's interrogatories or requests for production of documents.

### B. *Mr. Blumenthal's Notes*

Defendant asks the Court to compel plaintiffs to produce notes made by Mr. Blumen-

---

3. The Court notes that defendant too has missed court-imposed deadlines in this litigation without requesting an extension of time. Recently, defendant filed his oppositions to plaintiffs' motions to compel five days after they were due.

4. On these facts, a number of courts might treat plaintiffs' objections as waived. *See, e.g., Starlight Int'l v. Herlihy,* 181 F.R.D. 494, 496–97 (D.Kan.1998); *Demary v. Yamaha Motor Corp., U.S.A.,* 125 F.R.D. 20, 21 (D.Mass.1989). Counsel is admonished that the Court may adopt this position if faced with future disputes.

thal containing the substance of his conversations with various journalists, including David Brock. Mr. Blumenthal asserted in his deposition that he was seeking information for use in this litigation through his conversations with Mr. Brock and other journalists and that he prepared the notes at the request of his attorneys. He therefore argues that the notes are protected by the attorney-client privilege and as attorney work product. *See* Plaintiffs' Opposition at 22.

■ "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey,* 158 F.3d 1263, 1267 (D.C.Cir.1998). In this circuit, the privilege is narrowly construed to apply only when a client communicates something to his or her lawyer with the intent that it remain confidential and for the purposes of securing "either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Id.* at 1270 (quoting *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir. 1984)). As described, Mr. Blumenthal's notes do not appear to contain protected information since they contain only the substance of conversations between a non-lawyer, Mr. Blumenthal, and Mr. Brock and other third parties who also are not lawyers. If the notes contain the substance of Mr. Blumenthal's conversations with these third parties, they cannot be information communicated "for the purposes of securing legal advice or services." *In re Lindsey,* 158 F.3d at 1267. In short, the argument that the notes of Mr. Blumenthal's conversations with Mr. Brock and other journalists are attorney-client protected communications is far-fetched, if not frivolous.

■ The attorney work product argument is slightly more plausible. Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, "documents and tangible things otherwise discoverable" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative" may be protected from disclosure

as work product. Rule 26(b)(3), Fed.R.Civ.P. Such material may be prepared by an attorney, by the attorney's agent, by the party's agent, or—if the language of the Rule is read literally—in some cases, by a party itself. *Id.* In order for it to be work product, the material must have been found to be "prepared or obtained because of the prospect of litigation" after consideration of "the nature of the document and the factual situation in the particular case." *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998). Furthermore, work product that contains the attorney's mental impressions, opinions, theories or analysis (so-called "opinion work product")—those matters at the heart of the adversary system—is entitled to greater protection than ordinary work product. *See, e.g., Director, Office of Thrift Supervision v. Vinson Elkins, LLP,* 124 F.3d 1304, 1307 (D.C.Cir. 1997). Finally, unlike the attorney-client privilege, the work product privilege is not absolute; it is a qualified privilege that in the case of ordinary work product may be overcome by "a sufficient showing of necessity for the information and its unavailability by other means." *In re Sealed Case,* 856 F.2d 268, 273 (D.C.Cir.1988); *see* Rule 26(b)(3), Fed. R.Civ.P. ("substantial need").

In this case, defendant argues both that Mr. Blumenthal's notes are not work product and that, if they are, the privilege is overcome by defendant's substantial need for the notes because he cannot rely on the testimony of Mr. Blumenthal and may not be able to depose Mr. Brock and the other journalists. The Court need not rule on the question of whether defendant has shown a substantial need for the notes at this stage until it first determines whether the notes qualify as work product at all. To that end, the Court will examine all such notes withheld from production on the basis of attorney work product *in camera.*

### C. Executive Privilege

Defendant has moved to compel Mr. Blumenthal's answers to a number of deposition questions relating to his work as an advisor to the President of the United States.[5] Mr.

---

5. Defendant also argued that he is entitled to

further deposition time for Mr. Blumenthal as a

Blumenthal refused to answer each of these questions, raising the executive, or presidential communications, privilege. Defendant argues that Mr. Blumenthal does not have standing to invoke the privilege and, even if it were invoked, the privilege would be inapplicable in this case.

■■■■ The presidential communications privilege "is a governmental privilege intended to promote candid conversations between the President and his advisors concerning the exercise of his Article II duties." *In re Grand Jury Proceedings,* 5 F.Supp.2d 21, 25 (D.D.C.1998). The privilege is "limited to communications 'in performance of [a President's] responsibilities,' 'of his office,' and made 'in the process of shaping policies and making decisions.' " *In re Sealed Case,* 121 F.3d 729, 744 (D.C.Cir.1997) (quoting *Nixon v. Adm'r of General Services,* 433 U.S. 425, 449, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)). Once the President invokes the privilege, the information becomes "presumptively privileged." *Id.; see In re Grand Jury Proceedings,* 5 F.Supp.2d at 25–26.

■■■■ Mr. Blumenthal acknowledges that neither he nor his counsel can invoke executive privilege. The President alone possesses this authority. *See In re Sealed Case,* 121 F.3d at 744 ("The President can invoke the privilege when asked to produce documents and other materials that reflect presidential decision-making and deliberations and that the President believes should remain confidential"); *Nixon v. Adm'r of Gen. Services,* 433 U.S. at 448–51, 97 S.Ct. 2777 (past presidents, as well as the incumbent President, may invoke the privilege).

■■■■ Still, Mr. Blumenthal does have an obligation to preserve the presidential communications privilege long enough for the President to invoke it if he so desires. Contrary to defendant's assertions, the privilege should not be ignored in this case simply because the White House Counsel's Office did not have an attorney available to send to the deposition on short notice when Mr. Blumenthal's lawyer called the White House from the deposition room. If defendant wishes to pursue the lines of questioning to which Mr. Blumenthal asserted executive privilege, he may reopen the deposition of Mr. Blumenthal and provide plaintiffs either with sufficient notice so that they may secure the presence of a White House lawyer or with a list of the subjects for the deposition that might touch on privileged areas so plaintiffs can request White House review in advance.[6] If the President chooses to invoke executive privilege and the defendant seeks Court review, the Court will consider the merits of the claim at that time.

## II. PLAINTIFFS' MOTION TO COMPEL

### A. Attorney–Client Privilege

■■■■ Plaintiffs argue that defendant improperly invoked the attorney-client privilege in response to a number of their interrogatories and document requests. First, plaintiffs requested that defendant identify all communications to which defendant was a party that addressed the allegedly defamatory information at issue in this case. Defendant claimed that many of these communications were protected by the attorney-client privilege. Even if defendant is correct that the *substance* of the communications is privileged in some cases, he has no right to decline to *identify*

result of plaintiffs' counsel's alleged speaking objections and soliloquies in violation of Rule 30(d) of the Federal Rules of Civil Procedure. Upon review of the excerpted portions of the deposition transcripts, the Court finds that plaintiffs' counsel generally complied with Rule 30(d) and that most of the lengthy discussions between counsel were initiated by defendant's counsel. Counsel on both sides of this case are reminded that objections to deposition questions must be stated "concisely and in a non-argumentative and non-aggressive manner." Rule 30(d), Fed. R.Civ.P. The deposition room is no place for speeches, insults or arguments. Speaking objec-

tions, interruptions, statements and lectures are not appropriate and a witness may be instructed not to answer only if the question calls for privileged information. *Id.* Failure to comply with the Rule may result in sanctions. *See* Rule 30(d)(3), Fed.R.Civ.P.

**6.** At this point, it would seem that the easiest way to address the matter in this case is to provide White House Counsel with the excerpts from Mr. Blumenthal's deposition that contain the questions which Mr. Blumenthal declined to answer on grounds of executive privilege.

the privileged communications. Under Rule 26(b)(5) of the Federal Rules of Civil Procedure, a party invoking a privilege must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Rule 26(b)(5), Fed. R.Civ.P. Under the Rules, the defendant at least must describe the parties to the communications, the dates on which the communications occurred and their general subject matter.

Plaintiffs also request that the Court compel defendant to answer interrogatories regarding communications with third parties and the production of documents that were shared with third parties.[7] The majority of the communications and the documents at issue apparently involved or were shared with David Horowitz, president of the Individual Rights Foundation.[8] Normally, the attorney-client privilege is destroyed once information is shared with any person other than the attorney and the client because the presence of a third party is inconsistent with the client's intent that the communication remain confidential. *See In re Lindsey,* 158 F.3d at 1270. Defendant contends, however, that the attorney-client privilege extends to Mr. Horowitz because defendant has retained him as a "litigation consultant" who is using his media, journalistic and political consulting experience to assist defendant's attorneys. The Court is more than a little skeptical of this claim and has seen no evidence to support it.

It is true that in some cases the attorney-client privilege may be extended to non-lawyers who are "employed to assist the lawyer in the rendition of professional legal services." *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,* 5 F.3d 1508, 1514 (D.C.Cir.1993). This extension of the privilege to non-lawyers, however, must be "strictly confined within the narrowest possible limits consistent with the logic of its principle" and should only occur when "the communication [was] made in confidence for the purposes of obtaining legal advice from the lawyer." *Id.* (citations omitted); *see United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961) ("If what is sought is not legal advice ... or if the advice itself is the accountant's rather than the lawyer's, no privilege exists"). Here, it appears that Mr. Horowitz was retained for the value of his own advice, not to assist the defendant's attorneys in providing their legal advice, and defendant has not carried the burden of demonstrating that the privilege applies. *See In re Lindsey,* 158 F.3d at 1270 ("It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected"). The communications with Mr. Horowitz were not made for the purpose of obtaining advice from a lawyer and therefore are not protected by the attorney-client privilege. They must be disclosed.[9]

Plaintiffs also point out that several documents on defendant's privilege log were electronic mail messages that were forwarded by defendant's counsel to the defendant or his co-counsel. If any of these messages originally were sent by third parties,

---

7. Defendant invokes the attorney-client privilege for communications with third parties in response to interrogatory numbers 1, 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, 18, 23, 24 and 25 and document request numbers 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40 and 41. He also invokes the privilege with regard to document numbers 60, 97, 107, 107, 112, 113, 116, 117, 120, 125, 127, 134, 138 and 167 from his privilege log, all of which were shared with third parties.

8. Defendant also claims that document number 60 from his privilege log, a draft legal document that was provided to University of Southern California law professor Susan Estrich, is protected as attorney work product. Because a draft of a legal document contains insights into the mental processes of defendant's attorney, and because plaintiffs have not shown a substantial need for the document, it is properly shielded from disclosure as attorney work product. *See* Rule 26(b)(3), Fed.R.Civ.P.

9. While defendant also claims in his objections to plaintiffs' interrogatories and document requests and on his privilege log that the communications shared with Mr. Horowitz are protected as attorney work product, he makes no argument in support of this position.

then the message is not privileged. Defendant may redact any privileged communications between himself and counsel that were added to the original electronic mail message from a third party, but he must produce the original electronic mail message.[10]

### B. Information Regarding Defendant's Sources

Plaintiffs also objected to defendant's withholding of information about his sources for the allegedly defamatory information that is the subject of this litigation. Defendant maintains that such information is protected under the reporter's shield provision of the California Constitution and the First Amendment reporter's privilege.[11] Defendant's invocation of the California Constitution is curious, as he has provided no basis for the application of California law in this case. His argument regarding the First Amendment reporter's privilege, however, warrants more attention.

 While the First Amendment provides some protection for the identity of a reporter's confidential sources, there is no absolute bar to disclosure of confidential sources under all circumstances. The reporter's privilege is only a qualified privilege that can be overcome by a sufficient showing of need by the party seeking the information. In civil cases, the court must look at the specific facts of the case before it and "weigh[ ] the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C.Cir.1981) (citing *Carey v. Hume*, 492 F.2d 631, 636

(D.C.Cir.1974)). The protections of the First Amendment may be overcome when (1) the information cannot be discovered through alternative sources, (2) the party seeking the information has exhausted all reasonable alternative means of identifying the source, and (3) the information sought goes to the heart of plaintiffs' claim. *International Union v. National Right to Work Legal Defense and Educ. Found.*, 590 F.2d 1139, 1152 (D.C.Cir.1978); *see Clyburn v. News World Communications, Inc.*, 903 F.2d 29, 35 (D.C.Cir.1990) ("If the plaintiff exhausts all reasonable alternative means of identifying the source, the privilege may yield"). "When the journalist is a party, and successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more in favor of disclosure." *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C.Cir.1981).

 A party seeking disclosure of a reporter's confidential sources has the burden of demonstrating that he or she has "exhausted every reasonable alternative source of information." *See Zerilli v. Smith*, 656 F.2d at 713 ("Even when the information is crucial to a litigant's case, reporters should be compelled to disclose their sources only after the *litigant* has shown that he has exhausted every reasonable alternative source of information") (emphasis added). At this point, plaintiffs have not provided the Court with sufficient information for the Court to evaluate their request. Plaintiffs have proffered nothing to satisfy their burden, and the Court cannot find that the First Amendment's protections have been outweighed absent such a showing.[12]

---

**10.** Plaintiffs also contend that the Court should compel defendant to produce a number of documents from his privilege log for which he asserted the "Right of Privacy." Defendant asserted the "Right of Privacy" with regard to document numbers 10, 13, 19, 24–32, 49, 55, 57–59, 62 and 63. No such privilege is generally recognized in this context, however, and defendant may not withhold any documents on this basis. With the exception of document numbers 25–28, which appear to be protected by the attorney-client privilege, and document numbers 10, 13, 31, 49, 57–59, 62 and 63, which pertain to the membership of defendant's legal defense fund, the Court will compel production of these documents.

**11.** Defendant asserted these privileges with regard to plaintiffs' interrogatory numbers 1, 2, 3,

4, 5, 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, 18, 23, 24 and 25 and document request numbers 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40 and 41. For interrogatory number 2 and document request number 31, both of which request that defendant identify the thousands of people to whom he disseminated the Drudge Report, the Court concludes that compliance would be oppressive and burdensome and therefore will not compel defendant to respond.

**12.** In addition, plaintiffs' document request number 25 asks for information regarding defendant's sources for stories beyond the scope of this litigation. Defendant's interactions with his

Nor have plaintiffs expressed a view on whether either Mr. Blumenthal or Mrs. Blumenthal is a public figure. If they are, of course, their arguments for disclosure become stronger, but their ultimate burden of proof on the issue of liability simultaneously becomes higher because, as public figures, they would be held to the rigorous standard at trial of proving that the defendant acted with actual malice. *See Wolston v. Reader's Digest Ass'n. Inc.,* 443 U.S. 157, 163–64, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *McFarlane v. Sheridan Square Press, Inc.,* 91 F.3d 1501, 1508 (D.C.Cir.1996). Because defendant's sources would be the only insight into defendant's frame of mind other than the defendant's own testimony, information from the sources would go to the "heart of the matter" and be "crucial to [plaintiffs'] case" in a public figure case, making the argument in favor of disclosure more compelling. *See Zerilli v. Smith,* 656 F.2d at 713–14 (proof of actual malice "will frequently depend on knowing the identity of the newspaper's informant").

### C. The Membership of Defendant's Legal Defense Fund

Finally, plaintiffs request the Court to compel the disclosure of the membership of defendant's legal defense fund.[13] While plaintiffs assert that the information could lead to the discovery of information relating to defendant's sources of information, they provide no grounds for this conclusion.[14] Certainly without a more substantial basis for the request it must be denied because the disclosure of the list might implicate the First Amendment right to association of the fund members. *See, e.g., NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("compelled disclosure of affiliation with groups engaged in advocacy" may constitute an effective restraint on freedom of association). Because plaintiffs have not satisfied their burden of showing that the membership list is within the scope of permissible discovery, and because such discovery might implicate the First Amendment rights of the fund members, defendant will not be forced to disclose it.

SO ORDERED.

---

sources for other stories do not go to the heart of plaintiffs' claims.

**13.** Plaintiffs make this request in interrogatory numbers 17 and 25 and document request number 29. Documents 10, 13, 31, 49, 57–59, 62, and 63 from defendant's privilege log are also responsive to this request.

**14.** Plaintiffs also attempt to justify document request number 5, which inquires into the general funding of the Drudge Report, on the grounds that it could lead to the discovery of information relating to defendant's sources of information. Because plaintiffs also have not provided any basis for this conclusion, the Court will not compel defendant to respond to this request.