

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2003

# In Re Cendant Corp

Precedential or Non-Precedential: Precedential

Docket No. 02-4386

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In Re Cendant Corp " (2003). *2003 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 16, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4386

IN RE: CENDANT CORPORATION SECURITIES
LITIGATION

Ernst & Young LLP,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 98-cv-01664
(District Judge: Honorable William H. Walls)

Argued April 24, 2003

Before: SCIRICA, *Chief Judge*,* AMBRO and GARTH,
*Circuit Judges*

(Filed September 16, 2003)

ALAN N. SALPETER, ESQUIRE
(ARGUED)
Mayer, Brown, Rowe & Maw
190 South LaSalle Street
Chicago, Illinois 60603

---

* Judge Scirica began his term as Chief Judge on May 4, 2003.

DOUGLAS S. EAKELEY, ESQUIRE
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068

  Attorneys for Appellant,
  Ernst & Young LLP

GREGORY L. DISKANT, ESQUIRE
 (ARGUED)
ROBERT P. LoBUE, ESQUIRE
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, New York 10036

  Attorneys for Appellee,
  Cendant Corporation

HERBERT J. STERN, ESQUIRE
 (ARGUED)
Stern, Greenberg & Kilcullen
75 Livingston Avenue
Roseland, New Jersey 07068

  Attorney for Appellees, James E.
  Buckman, Leonard S. Coleman,
  Jr., Christel DeHaan, Martin L.
  Edelman, Scott E. Forbes, Stephen
  P. Holmes, Robert D. Kunisch,
  Michael P. Monaco, Brian
  Mulroney, Robert E. Nederlander,
  Robert W. Pittman, E. John
  Rosenwald, Leonard Schutzman,
  Henry R. Silverman, Robert F.
  Smith and John D. Snodgrass

DANIEL L. BERGER, ESQUIRE
Bernstein, Litowitz, Berger
 & Grossmann
1285 Avenue of the Americas,
 33rd Floor
New York, New York 10019

   Attorney for Appellees,
   California Public Employees'
   Retirement System, New York
   State Common Retirement Fund,
   New York City Pension Funds

ANDREW ENTWISTLE, ESQUIRE
Entwistle & Cappucci
299 Park Avenue
New York, New York 10171

   Attorney for Appellee,
   State Board of Administration of
   Florida

---

## OPINION OF THE COURT

SCIRICA, *Chief Judge.*

At issue on appeal is whether the "work product" of a non-testifying trial consultant in this case is privileged and subject to only limited discovery. Ernst & Young, LLP, and Cendant Corporation are co-defendants in a federal securities class action involving Cendant's alleged accounting fraud. The class action claims were settled, leaving claims asserted by Cendant and Ernst & Young against each other as the focus of the remaining litigation.[1]

---

1. Cendant alleges that Ernst & Young was at least negligent in its audits and that it actively participated in a conspiracy to hide fraud from the investing public. Ernst & Young counter-claims that Cendant defrauded its auditors.

## I.

Cendant deposed Simon Wood, a former Ernst & Young senior manager and auditor who prepared the Cendant financial statements at issue in the underlying litigation.[2] At Wood's deposition, Cendant inquired into communications that took place between Wood, Ernst & Young's counsel who also represented Wood, and Dr. Phillip C. McGraw of Courtroom Sciences, Inc. Dr. McGraw is a consulting expert in trial strategy and deposition preparation who was retained as a non-testifying trial expert to assist Ernst & Young's counsel in anticipation of litigation.

Specifically, Cendant's counsel asked Wood: "Have you ever met Phil McGraw?"; "On how many occasions did you meet with Phil McGraw?"; "Did you understand Phil McGraw to be a jury consultant?"; "Did Mr. McGraw provide you with guidance in your conduct as a witness?"; "Did you rehearse any of your prospective testimony in the presence of Mr. McGraw?"; "In the course of preparing for this deposition . . . did you review any work papers?"; "Did you select the work papers that you reviewed?"; "Did you ask anyone for the opportunity to review any particular work papers?"; and "Did you ask to review work papers on any particular subject?" Ernst & Young's counsel objected, citing the work product doctrine and the attorney-client privilege and arguing the discovery sought related to private communications relayed in the presence of counsel and for the purpose of assisting counsel in rendering legal advice. In March 2002, the Special Discovery Master[3] held:

> Wood may be asked whether he has met with Dr. McGraw, the date and duration of any meetings, who was present and the purpose for same. He may not be asked what Dr. McGraw told the witness, whether testimony was practiced, whether any part of the meetings were recorded, whether the witness took any notes, or whether Dr. McGraw provided the witness

---

2. Wood was manager on the Ernst & Young audit team for the audit year that ended January 31, 1997 and senior manager on the audit team for the calendar year that ended December 31, 1997.

3. The Special Discovery Master was Robert E. Tarleton, J.S.C. (Ret.).

with any documents. In my view, answers to the latter questions would violate the work product doctrine.

From the information developed thus far, it appears that Dr. McGraw is an expert retained by Ernst & Young's counsel to assist in trial preparation. He is not expected to be called as a witness and no exceptional circumstances have been cited to justify the exploration Cendant seeks.

In November 2002, the District Court reversed the Special Discovery Master's determination, holding the work product doctrine and attorney-client privilege did not apply. The District Court said:

[W]ork product deals with things legal, things with preparation, evaluation, strategies, tactics and it is at first limited to lawyers and then will strictly or rigidly expand it, or restrictively expand it to include people such as paralegals and maybe assistants to lawyers because of their intimacy with the lawyer.

The privilege is really that of the lawyers. . . . because he or she has a right to tell his or her client certain things. But, when we go beyond that into a person who is not dealing with the law but telling someone how to prepare it as *Blumenthal v. Drudge* indicates, one of the questions where the lawyer was telling this witness what to do, it's a question what this jury consultant [is] more or less telling that person what to do.

Let me read from . . . the *Blumenthal* opinion . . . .

"It is true that in some cases the attorney-client privilege may be extended to non lawyers who are employed to assist the lawyer in the rendition of professional legal services. This extension of the privilege to non lawyers, however, must be strictly confined within the narrowest possible limits consistent with the logic of its principle and should only occur when the communication was made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice or if the advice itself is the accountant's rather than the lawyers, no privilege exists.

. . . .

Here it appears that Mr. Horowitz was retained for the value of his own advice, not to assist the defendant's attorney in providing their legal advice, and the attorney has not carried the burden of demonstrating that the privilege applies."

[W]e all know what a jury consultant does. He doesn't come down and tell you in the case of Expert Z you have to blah, blah and you have to be careful of the countervailing opinion in B versus J. He or she says come on now, you've got to spruce up. You have to look this way and you never know what the jury may be composed of demographically. . . .

It's not designed to augment. It's not designed to substitute for legal advice. That's not legal advice. That's the cosmetic applied . . . .

(quoting *Blumenthal v. Drudge*, 186 F.R.D. 236, 243 (D.D.C. 1999)). Ernst & Young now appeals. We will reverse.[4]

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.[5] Although we generally review the decision to grant a motion to compel for abuse of discretion, our review is plenary where the decision was based upon the interpretation of a legal precept. *Armstrong v. Dwyer*, 155 F.3d 211, 214 (3d Cir. 1998).

---

4. Because we resolve this dispute on the federal work product doctrine issue, we do not reach the attorney-client privilege issue.

5. We have jurisdiction under the collateral order doctrine of 28 U.S.C. § 1291 because the District Court Order compels the disclosure of materials that Ernst & Young contends are protected by the work product doctrine and attorney-client privilege. *See Montgomery County v. Microvote Corp.*, 175 F.3d 296, 300 (3d Cir. 1999) (stating that we follow the "bright-line rule permitting appeals from discovery orders requiring the disclosure of content putatively privileged by the attorney-client and work-product privileges").

## III.

## A.

The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3)[6] and "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under Rule 26(b)(3), the work product doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . . ." Fed. R. Civ. P. 26(b)(3); *see also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024, at 359 (2d ed. 1994) ("[I]t is clear that all documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product, so long as they were prepared in anticipation of litigation or preparation for trial."). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947):

> In performing his various duties, it is essential that

---

6. Fed. R. Civ. P. 26(b)(3) provides, in relevant part:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways—aptly though roughly termed . . . as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.

It is clear from *Hickman* that work product protection extends to both tangible and intangible work product. *Id.*; *Federal Practice and Procedure* § 2024, at 337 ("Rule 26(b)(3) itself provides protection only for documents and tangible things and . . . does not bar discovery of facts a party may have learned from documents that are not themselves discoverable. Nonetheless, *Hickman v. Taylor* continues to furnish protection for work product within its definition that is not embodied in tangible form . . . . Indeed, since intangible work product includes thoughts and recollections of counsel, it is often eligible for the special protection accorded opinion work product."). Furthermore, this protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants. As the Supreme Court explained, "[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect materials prepared by agents of the attorney as well as

those prepared by the attorney himself." *Nobles*, 422 U.S. at 238-39; *see also Federal Practice and Procedure* § 2024, at 361 ("[I]f statements of witnesses are to be protected from discovery at all, the protection should not depend on who obtained the statement. Accordingly the 1970 amendment expressly extends protection to documents prepared by or for a representative of a party, including his agent."). Similarly, in explaining Rule 26(b)(3), the Advisory Committee on Civil Rules said:

> Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. The rule then goes on to protect against disclosure the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or other representative of a party.

Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment.

### B.

But the work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation. Work product can be produced

> upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

Thus, Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing of

need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents. Fed. R. Civ. P. 26(b)(3). Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." *Id.*; *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997). Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

Courts have wrestled with the idea of affording opinion work product absolute immunity from discovery. *Federal Practice and Procedure* § 2026, at 400; 6 *Moore's Federal Practice* § 26.70[5][e], at 26-224 (Mathew Bender 3d ed.). In 1946, the Advisory Committee on Civil Rules proposed a rule that would create absolute protection against discovery into information at the core of the work product doctrine, but the Supreme Court declined to adopt it. *Federal Practice and Procedure* § 2026, at 400.

In *Upjohn v. United States*, 449 U.S. 383 (1981), the Supreme Court declined to establish a rule for discovery of core or opinion work product, noting that "some courts have concluded that no showing of necessity can overcome protection of work product which is based on oral statements from witnesses" and that other courts in "declining to adopt an absolute rule have nonetheless recognized that such material is entitled to special protection." *Id.* at 401-402. Although the Supreme Court refused to "decide the issue at this time," the Court took an expansive approach to the work product doctrine, explaining that "such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship. While we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far

stronger showing of necessity and unavailability . . . would be necessary to compel disclosure." *Id.*

This holding is consistent with the language of Rule 26(b)(3) which provides that a court, in ordering discovery once a showing of need and hardship has been made, "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." Fed. R. Civ. P. 26(b)(3). Accordingly, we have held that opinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("Opinion work product . . . is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."); *see also Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("[E]fforts to obtain disclosure of opinion work product should be evaluated with particular care."); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979) ("Memoranda summarizing oral interviews . . . may indirectly reveal the attorney's mental processes, his opinion work product. . . . [S]pecial considerations . . . must shape any ruling on the discoverability of interview memoranda like those at issue in this case. The result, we believe, is exactly that contemplated in *Hickman*; such documents will be discoverable only in a 'rare situation.' "); *accord In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988) ("Courts typically afford ordinary work product only a qualified immunity, subject to a showing of substantial need and hardship, while requiring a hardier showing to justify the production of opinion work product."); *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) ("As the work product sought here is based on oral statements from witnesses, a far stronger showing is required than the 'substantial need' and 'without undue hardship' standard applicable to discovery of work-product protected documents and other tangible things.").

Nevertheless, Cendant argues that Rule 26(b)(3)'s work product protection is superseded by Rule 26(b)(4)(B), which governs discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B).[7] But Rule 26(b)(3) provides work product protection independently of Rule 26(b)(4)(B). In *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir. 1984), we held attorney opinion work product shown to experts in an antitrust case was not discoverable. We explained:

> [T]he first sentence [of Rule 26(b)(3)] requires protection against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. The proviso introduces the first sentence of Rule 26(b)(3) ("*Subject to the provisions of subdivision (b)(4) of this rule*, a party may obtain discovery of documents . . . prepared in anticipation of litigation or for trial . . .") and signifies that trial preparation material prepared by an expert is also subject to discovery, but only under the special requirements pertaining to expert discovery set forth in Rule 26(b)(4). The proviso does not limit the second sentence of Rule 26(b)(3) restricting disclosure of work product containing "mental impressions" and "legal theories." Thus, it does not support the district court's conclusion that Rule 26(b)(3), protecting this category of attorney's work product, "must give way" to Rule

---

7. Rule 24(b)(4)(B) precludes discovery against an expert informally consulted in preparation for trial. Fed. R. Civ. P. 26(b)(4), Advisory Comm. Notes, 1970 Amendment. Under this rule, a party "may discover facts known or opinions held by an expert who has been retained or specially employed . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B). Once such a showing is made, a court, before ordering discovery, must analyze the policy considerations underlying the rule to determine whether they outweigh the exceptional circumstances. *Moore's Federal Practice* § 26.80[2], at 26-236.5 (citing the policy consideration of "allowing counsel to obtain the expert advice they need to properly evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the discovery mill").

> 26(b)(4), authorizing discovery relating to expert witnesses.

*Id.* at 594.

## C.

Litigation consultants retained to aid in witness preparation may qualify as non-attorneys who are protected by the work product doctrine. *See, e.g.*, *Ford Motor Co.*, 110 F.3d at 967 (the work product doctrine protected materials prepared by an in-house technical assistant for meetings to be attended by an outside technical consulting firm and lawyers regarding an issue in a product liability suit); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993) (a technical report prepared by a consulting firm was protected from discovery because the document was prepared in anticipation of litigation by a party's representative (a consultant) for that party's representative (the company's in-house lawyer)); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) (the work product doctrine extended beyond materials reflecting an attorney's mental impressions to encompass materials prepared in anticipation of litigation by a party's insurer); *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 869-870 (1st Cir. 1982) (opinion letter setting forth expert's medical opinion was protected because it was prepared to advise counsel); *see also* Dennis P. Stolle et al., *The Perceived Fairness of the Psychologist Trial Consultant*, 20 Law & Psychol. Rev. 139, 169 (1996) ("Modern trial consulting methods typically consist of many techniques such as witness preparation, and mock trials, that clearly could not be framed as falling outside of the work product rule."). Moreover, a litigation consultant's advice that is based on information disclosed during private communications between a client, his attorney, and a litigation consultant may be considered "opinion" work product which requires a showing of exceptional circumstances in order for it to be discoverable. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976) ("[O]pinion work product immunity now applies equally to lawyers and non-lawyers alike."); Stanley D. Davis & Thomas D. Beisecker, *Discovering Trial Consultant*

*Work Product: A New Way to Borrow an Adversary's Wits?*, 17 Am. J. Trial Advoc. 581, 619 (1994) ("[T]he attorney's discussions of case theory and the consultant's suggestions thereon should qualify for the higher protection accorded mental impressions.").

## D.

Cendant concedes "that the work product doctrine extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation," and further, "that the doctrine also protects the 'intangible' work product of an attorney, such as testimony that would reveal counsel's mental impressions or trial strategy." (Appellee Br. at 26). But Cendant contends that a non-attorney's advice regarding witness testimony does not fall under the work product doctrine. Cendant asserts that the jury is entitled to know the consultant's communications with the witness, in the same way it is entitled to know and assess all other factors that may have informed the witness's testimony and may affect credibility. The District Court held that the work product doctrine should be cabined to lawyers and be strictly limited when applied to a lawyer's agent. The District Court said:

> [W]ork product deals with things legal, things with preparation, evaluation, strategies, tactics and it is at first limited to lawyers and then will strictly or rigidly expand it, or restrictively expand it to include people such as paralegals and maybe assistants to lawyers because of their intimacy with the lawyer.
>
> The privilege is really that of the lawyers. . . . because he or she has a right to tell his or her client certain things. But, when we go beyond that into a person who is not dealing with the law but telling someone how to prepare it as *Blumenthal v. Drudge* indicates, one of the questions where the lawyer was telling this witness what to do, it's a question what this jury consultant [is] more or less telling that person what to do.

As noted, in reaching its decision, the District Court relied on *Blumenthal*, which held communications between a client and a political consultant were not protected by the attorney-client privilege when no attorney was involved in the communication. 186 F.R.D. 236. But the *Blumenthal* court never considered the work product doctrine because it was never raised. *Id.* at 243 n.9. The District Court's reliance on *Blumenthal* therefore was misplaced because "the work product doctrine is distinct from and broader than the attorney-client privilege." *Nobles*, 422 U.S. at 238 n.11.

### E.

As noted, the District Court held that the work product doctrine should be cabined to lawyers and be strictly limited when applied to a lawyer's agent. The District Court said:

> I admit that if an attorney had prepped his witness like I think all of us who are single or small firms have done without the need for a jury consultant X, you've got to shave, you've got to do this, you got to put this question, you've got to put that answer that way and all of that, I'm quite sure anyone in his right mind would consider that part of work product and attorney-client activity and no one even tries to find out what went on.
>
> But my problem is when you don't bring in a lawyer, you bring in someone who is not dealing with the law but dealing with the manner in which things are presented, then I think it may be a little bit much to expect that to be countenanced . . . .

After the District Court made this determination, Cendant conceded that it was not accusing Ernst & Young of fabricating false testimony in the meetings between Wood, his attorney, and Dr. McGraw.[8] But Cendant argued

---

8. The protection afforded opinion or core work product may be breached when there is a charge of falsified testimony. *See In re Impounded Case*, 879 F.2d 1211, 1213-14 (3d Cir. 1989) (noting that the attorney-client

that, as a result of the District Court's conclusion that the work product doctrine did not extend to meetings with Dr. McGraw, they were entitled to inquire into the content of those meetings. Cendant said "We are not here now deciding what they did or accusing them of anything. But once it is not privileged . . . once that veil is no longer there, we are entitled . . . to show anybody, judge or jury, what went on as they practiced with the witness." (Tr. Dec. 13, 2002).

We disagree and hold that the work product of Dr. McGraw is privileged and subject to only limited discovery. Ernst & Young contends that questioning into the content of advice Dr. McGraw gave to Wood during a private consultation with Wood's attorney clearly calls for attorney work product protection. In retaining Dr. McGraw, Ernst & Young expected all counsel's communications with him to be confidential and protected from discovery. Had Ernst & Young or its counsel anticipated that counsel's communications with this litigation consultant would be subject to discovery, Ernst & Young asserts Dr. McGraw would not have been retained or the nature and extent of the matters counsel communicated to him would have been severely curtailed.

Ernst & Young asserts that, based upon the expectation of confidentiality, Dr. McGraw participated in frank and open discussions with Ernst & Young's counsel regarding counsel's view of the important facts of the case, the contentions of the parties, and Ernst & Young's trial themes, theories, and strategies. These discussions were at all times understood and intended to be confidential by all participants. Furthermore, in connection with these discussions, Dr. McGraw was provided with documents prepared by Ernst & Young's counsel reflecting counsel's mental impressions, opinions, conclusions, and legal

---

privilege, like the work product doctrine, does not limit discovery into matters where a law firm allegedly acted criminally); *In re Doe*, 662 F.2d 1073 (4th Cir. 1981) (affirming a district court order that allowed disclosure of opinion work product where the government presented a prima facie case of subordination of perjury by the attorney during his representation of clients in criminal trials).

theories. In addition, Dr. McGraw's notes of these discussions may reflect the mental impressions, opinions, conclusions, and legal theories of Ernst & Young's counsel. Discovery of this information goes to the core of the work product doctrine and, therefore, is discoverable only upon a showing of extraordinary circumstances. Cendant has failed to cite any extraordinary circumstances that would justify discovery of the information sought. Thus, the private communications between Wood, Dr. McGraw, and counsel merit protection under the work product doctrine, as they reflect and implicate Ernst & Young's legal strategy regarding a deposition taken as part of this litigation.

## IV.

Compelled disclosure of the substance of conversations between Wood, his counsel, and Dr. McGraw would require disclosure of communications protected by the work product doctrine. The communications took place during a consultation that focused on those issues that counsel and Dr. McGraw perceived to be central to the case. Moreover, the communications were intended to be confidential and made in anticipation of litigation. As such, the communications are at the core of the work product doctrine and are only discoverable upon a showing of rare and exceptional circumstances. The issue on appeal is whether the District Court erred in concluding that communications between Dr. McGraw, Wood, and counsel are not protected from discovery by any privilege or immunity.

We hold that the District Court erred and that the Special Discovery Master's ruling is essentially correct. These communications merit work product protection. The Special Discovery Master properly found that no exceptional circumstances were cited to justify the exploration sought by Cendant. Nonetheless, we believe Wood may be asked whether his anticipated testimony was practiced or rehearsed. But this inquiry should be circumscribed. As with all discovery matters, we leave much to the sound discretion of the District Court.

For the reasons outlined, we will reverse the order of the District Court and remand for proceedings consistent with this opinion.

GARTH, *Circuit Judge*, concurring.

I concur fully with the analysis and holding of the Court's opinion authored by Chief Judge Scirica. There is no question but that Federal Rules of Civil Procedure 26(b)(3) and (4) do not permit the discovery of Dr. McGraw which Cendant sought.

I am also in accord with Chief Judge Scirica's holding that the Special Discovery Master's ruling and directions as to limited discovery are correct. In my view, that ruling and those directions should govern the further discovery proceedings.

I write separately, however, for I am also of the opinion that the discovery which was sought in the instant context was precluded as well by the attorney-client privilege—an issue not reached by Chief Judge Scirica in his opinion. *See* Maj. Op. at 6 n.5. The parties extensively briefed, and presented oral argument on, the applicability of the attorney-client privilege.

While I recognize that in certain respects the attorney-client privilege has more narrow parameters than the work product doctrine, *see, e.g., United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975), I nevertheless am satisfied that the attorney-client privilege was operative when Dr. McGraw, the client Wood, and E&Y's counsel were engaged in contemporaneous and simultaneous discussions concerning the instant litigation. As counsel for E&Y stated in its brief, "the District Court's attempt to 'carve out' allegedly non-privileged 'two-way' communications between a client and a trial consultant during a 'three-way' meeting among *counsel*, the client, and the trial consultant is . . . impossible to execute." (E&Y Br. at 15.) That view was expressed even more forcefully in Stanley D. Davis & Thomas D. Beisecker, *Discovering Trial Consultant Work Product: A New Way to Borrow an Adversary's Wits?,* 17 Am. J. Trial Advoc. 581, 626-27 (1994) (explaining that communications between a client practicing testimony and a consultant are not discoverable because "[i]ntertwined with the client's responses to mock questions, and the consultant's reactions thereto, will inevitably be client communications . . . which are . . . intended by the client

to be a confidential part of the relationship with counsel. Extirpating the comments of the consultant from this context may well be impossible without bringing along these communications and thus frustrating the purpose of the attorney-client privilege.").

The attorney-client privilege operates to protect from disclosure communications among the client, counsel, and in circumstances such as are present here, a third party (here, Dr. McGraw) who was assisting E&Y's counsel in the formulation of legal advice. Thus, I am persuaded that in addition to the work product privilege, the attorney-client privilege also protected communications voiced at the meetings of Wood's counsel and Dr. McGraw. As I cannot conceive of how this three-way interchange of views among these three participants at their strategy conferences could be dissected or parsed, leaving only E&Y's questions and advice, I would also hold that the attorney-client privilege was implicated.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*